# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHANIEL A. CRAMER, | : | |
| | : | |
| Plaintiff | : | Civil Action No. |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| PFIZER INC., | : | FILED ELECTRONICALLY |
| | : | |
| Defendant | : | |

## COMPLAINT

### PARTIES

1. Plaintiff, Nathaniel A. Cramer ("Mr. Cramer" or "Plaintiff"), is an adult individual, currently residing at 400 Rear South York Street, Mechanicsburg, Cumberland County, Pennsylvania 17055.

2. Defendant, Pfizer Inc. ("Pfizer"), is a New York corporation maintaining offices and conducting business in Pennsylvania, including at 219 Allen Road, Carlisle, Cumberland County, Pennsylvania 17013.

### JURISDICTION AND VENUE

3. At all relevant times, Pfizer employed in excess of 500 employees.

4. This Court has subject matter jurisdiction over this action because Mr. Cramer's claims arise under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a ("Title VII"), and the Americans with Disabilities Act of 1990, *as amended* ("ADA"), 42 U.S.C. § 12101, *et seq*.

5. This is a civil action involving claims in excess of $75,000, exclusive of interest and costs. Jurisdiction is based on 28 U.S.C. §1331 (federal question).

6. Mr. Cramer received EEOC's notice of right to sue fewer than 90 days before the filing of this complaint.

7. Venue over this action lies with the United States District Court for the Middle District of Pennsylvania.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8. From April 25, 2016, to approximately October 24, 2016, Mr. Cramer worked as a tote washer for Pfizer at its plant located at 219 Allen Road, Carlisle, Pennsylvania 17013.

9. Shortly after Mr. Cramer began working for Pfizer, he hurt his right shoulder, received certain medical treatment, and was diagnosed as having a torn right rotator cuff.

10. Mr. Cramer requested and was granted medical leave by Pfizer for approximately four days and was authorized to return to work by his treating physician despite having ongoing pain and limitations in his right shoulder.

Case 1:18-cv-01021-YK   Document 1   Filed 05/15/18   Page 2 of 14

U.S.C. §2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a ("Title VII"), and the Americans with Disabilities Act of 1990, *as amended* ("ADA"), 42 U.S.C. § 12101, *et seq*.

5. This is a civil action involving claims in excess of $75,000, exclusive of interest and costs. Jurisdiction is based on 28 U.S.C. §1331 (federal question).

6. Mr. Cramer received EEOC's notice of right to sue fewer than 90 days before the filing of this complaint.

7. Venue over this action lies with the United States District Court for the Middle District of Pennsylvania.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8. From April 25, 2016, to approximately October 24, 2016, Mr. Cramer worked as a tote washer for Pfizer at its plant located at 219 Allen Road, Carlisle, Pennsylvania 17013.

9. Shortly after Mr. Cramer began working for Pfizer, he hurt his right shoulder, received certain medical treatment, and was diagnosed as having a torn right rotator cuff.

10. Mr. Cramer requested and was granted medical leave by Pfizer for approximately four days and was authorized to return to work by his treating physician despite having ongoing pain and limitations in his right shoulder.

-2-

11. For several months, Mr. Cramer was the only employee working in a certain section of the plant and, as part of his essential job duties, needed assistance to perform various physical activities and to meet the demands of the workplace. All other tote washers worked together in different sections of the plant and helped one another as needed.

12. For several months, Mr. Cramer repeatedly asked his supervisor, Craig Woodal, for customary help to complete his job.

13. Mr. Woodal knew that Mr. Cramer had sustained an injury to his right shoulder and that he was having pain in trying to complete his burdensome work responsibilities.

14. Despite Mr. Cramer's request for accommodation of his right shoulder injury, his supervisors and employer never provided him with a co-worker to assist him in meeting the demands of his job.

15. On October 20, 2016, Mr. Cramer's supervisor, Mr. Woodal, asked Mr. Cramer whether he was unable to perform his job functions.

16. In response, Mr. Cramer stated that he was able to perform his job functions, but needed the assistance that he had repeatedly requested (and that had been provided to all other tote washers).

17. Mr. Woodal repeated the same question, and Mr. Cramer provided the same response, at which point Mr. Woodal began to swear and scream at Mr. Cramer.

18. Mr. Cramer asked Mr. Woodal to stop screaming and swearing at him and began to walk away to find and talk with his fiancée, Jenna Keller.

19. Mr. Woodal thereafter warned Mr. Cramer that if he left the workplace, he would be fired.

20. In response, Mr. Cramer stated that he had never said that he was leaving work. Mr. Cramer then asked Mr. Woodal to please leave him alone and not harass him, confirming that he was looking for Ms. Keller.

21. Roughly two hours later, Mr. Woodal summoned Mr. Cramer to his office and informed him that he was suspended without pay.

22. Mr. Cramer asked Mr. Woodal why he was suspended, and Mr. Woodal indicated that it was because of Mr. Cramer's "language and behavior."

23. In response, Mr. Cramer stated to Mr. Woodal that he was the one that was swearing and screaming at Mr. Cramer and that Mr. Cramer didn't use any inappropriate language or behave inappropriately. Mr. Cramer also stated that he could not believe he was being suspended, noting that he had been asking for help for several months. Mr Cramer also asked Mr. Woodal to move him to a different shift (with a different supervisor).

24. After Mr. Woodal instructed Mr. Cramer to leave the premises, Mr. Cramer stated that he needed to get his car keys in the tote room. Mr. Woodal then walked out to the assembly room and looked for Ms. Keller instead of getting Mr. Cramer's keys.

25. Mr. Cramer was standing in the hallway with another supervisor when Mr. Woodal returned with Ms. Keller.

26. Ms. Keller stated to Mr. Woodal that she was tired of being sexually harassed by a fellow employee, Willie (last name unknown), and questioned why Mr. Cramer was being suspended while Willie sexually harassed many females and didn't do his job.

27. Mr. Cramer then asked Mr. Woodal whether he was going to allow Willie to continue to sexually harass Ms. Keller in Mr. Cramer's absence.

28. Mr. Cramer also renewed his previous request to be moved to a different shift performing the same job.

29. In response, Mr. Woodal stated that Mr. Cramer was fired and that both he and Ms. Keller had to leave the premises immediately.

30. Ms. Keller and Mr. Cramer left the premises but were approached by a security guard, who insisted that they provide him with their employee badges.

31. After Mr. Woodal stated that Mr. Cramer was fired, he contacted Human Resources numerous times to discuss the status of his employment.

32.     On approximately October 20, 2016, an HR representative confirmed that Mr. Cramer was not going to be terminated, and later that day, HR informed Mr. Cramer that he was still in the company's database as an active employee.

33.     On other occasions, HR representatives, including Nachoo Nimish (phonetic spelling), confirmed that Mr. Cramer would get his job back and would be able to work on a different shift.  During such conversations, Mr. Cramer emphasized that he did not want to be contacted by Mr. Woodal, because he would no longer be working on his shift and because he did not want to be subjected to his continued harassment.

34.     The HR representative informed Mr. Cramer that he had not been fired and would be considered suspended with pay prior to his job reinstatement. One or more HR representatives also reaffirmed that Mr. Cramer would be moved to a different shift.

35.     Shortly thereafter, despite Mr. Cramer's request to HR, Mr. Woodal called Mr. Cramer and stated that he had been fired.  Once again, Mr. Cramer called HR, who reaffirmed that he wasn't going to lose his job.

36.     Several days later, Mr. Cramer received a letter from Pfizer stating that he had been terminated from employment, but not providing any reason for the termination.

37. Despite his repeated requests, Mr. Cramer's supervisors failed to engage in an interactive process or dialogue and failed to reasonably accommodate him in performing the essential functions of his job with the assistance of a necessary co-worker (as provided to other tote washers). Mr. Cramer's supervisor also denied his request for a shift change.

38. Additionally, on numerous occasions before Mr. Cramer was wrongfully disciplined and terminated, he expressly opposed the sexually hostile work environment and the ongoing sexual harassment of his fiancée, Jenna Keller, by a co-worker (Willie), and/or participated in an investigation.

39. Mr. Cramer's supervisor, Mr. Woodal, another supervisor, Sean Nightwine, and Pfizer knew that Willie was sexually harassing Ms. Keller (and other female employees), but failed to investigate and prevent the ongoing harassment.

40. Mr. Cramer's supervisor and employer instead discriminated and retaliated against him based on his known disability, his participation in an investigation, and/or his opposition to sexual harassment and the hostile work environment.

41. Willie's sexual harassment of Ms. Keller (and other female employees) was offensive, sufficiently severe or pervasive, and otherwise created an intimidating or offensive work environment.

42. When Mr. Cramer continued to press the cessation of the sexual harassment, one or more supervisors stated that Willie had a discrimination suit against the company and they could not say anything to him.

43. At all relevant times, Pfizer discriminated and retaliated against Mr. Cramer, disciplined and terminated him, and otherwise denied certain terms and conditions of employment which were granted in favor of other comparators/employees, including job accommodations, shift and supervisor changes, harassment investigations and prevention, and progressive discipline.

## COUNT I
## SEX DISCRIMINATION AND SEXUAL HARASSMENT

44. Mr. Cramer incorporates by reference herein paragraphs 1 through 43 above.

45. At all relevant times, Mr. Cramer was a qualified member of a protected class (male).

46. Pfizer discriminated against Mr. Cramer, a male, by failing to provide him with progressive discipline and by unfairly disciplining and terminating him for purported attendance issues, while not enforcing absentee and tardiness violations by female employees.

47. Mr. Cramer also opposed a hostile work environment and a pattern and practice of sexual harassment in the workplace including the sexual harassment by a coworker (Willie) of Mr. Cramer's fiancée, Jenna Keller.

48. As a result of Defendant's unlawful conduct, Mr. Cramer has sustained lost wages, lost retirement, and other benefits, attorneys' fees and costs, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

49. Additionally, as a result of Defendant's intentional wrongdoing, which was committed in bad faith and in reckless disregard of Mr. Cramer's interests, he is entitled to punitive damages in excess of $75,000, plus interest and costs.

50. As a further result of Defendant's unlawful conduct, Mr. Cramer suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related medical conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendant including the following relief:

A.     reinstating or hiring Plaintiff to his former or another comparable position;

B.   compensation for back and front pay, including all forms of compensation, employee benefits, and retirement;

C.   compensatory, statutory, and punitive damages in amounts to be determined at trial;

D.   attorneys' fees, costs, and interest; and

E.   such other relief as this court deems appropriate.

## COUNT II
## RETALIATION (SEX DISCRIMINATION AND HARASSMENT)

51.   Mr. Cramer incorporates by reference herein paragraphs 1 through 50 above.

52.   As alleged above, Mr. Cramer engaged in "protected activity" within the meaning of Title VII including his participation in an investigation and/or his repeated opposition to a hostile environment and sexual harassment in Pfizer's workplace.

53.   As a result of Defendant's unlawful conduct, Mr. Cramer has sustained lost wages, lost retirement, and other benefits, attorneys' fees and costs, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

54. As a further result of Defendant's unlawful conduct, Mr. Cramer has suffered embarrassment, emotional distress, humiliation, and mental anguish in an unliquidated amount in excess of $75,000, plus interest and costs.

55. Additionally, as a result of Defendant's intentional wrongdoing, which was committed in bad faith and in reckless disregard of Mr. Cramer's interests, he is entitled to punitive damages in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendant including the following relief:

A. reinstating or hiring Plaintiff to his former or another comparable position;

B. compensation for back and front pay, including all forms of compensation, employee benefits, and retirement;

C. compensatory, statutory, and punitive damages in amounts to be determined at trial;

D. attorneys' fees, costs, and interest; and

E. such other relief as this court deems appropriate.

## COUNT III
## DISABILITY DISCRIMINATION AND RETALIATION

56. Plaintiff incorporates by reference herein paragraphs 1 through 55 above.

57. At all relevant times, Mr. Cramer had a right shoulder injury and legally protected disabilities under the Americans with Disabilities Act, as amended, including:

  (a) a physical and/or mental impairment that substantially limited one or more major life activities;

  (b) a record of such an impairment; and/or

  (c) being regarded as having such an impairment.

58. Defendant discriminated and retaliated against Mr. Cramer based on his right shoulder injury and his related disabilities within the meaning of the Americans with Disabilities Act, as amended, even though Mr. Cramer was qualified and was capable of performing the essential functions of his job with or without accommodation.

59. Additionally, Defendant failed to engage in an interactive process; failed to provide requested and reasonable accommodation for Mr. Cramer's disabilities; failed to provide progressive discipline; and/or disciplined, suspended,

and/or terminated him as a result of and/or in retaliation for his disabilities and protected activity.

60. Defendant also created a hostile work environment and harassed Mr. Cramer for his disabilities and protected activity.

61. As a result of Defendant's unlawful conduct, Mr. Cramer has sustained lost wages, lost overtime, lost bonuses, lost retirement and employee benefits, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

62. Additionally, as a result of Defendant's intentional wrongdoing, which was committed in bad faith and in reckless disregard of Mr. Cramer's interests, Mr. Cramer is entitled to punitive damages in excess of $75,000, plus interest and costs.

63. As a further result of Defendant's unlawful conduct, Mr. Cramer has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related medical and mental health conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendant including the following relief:

A. reinstating or hiring Plaintiff to his former or another comparable position;

    B.    compensation for back and front pay, including all forms of compensation, employee benefits, and retirement;

    C.    compensatory, statutory, and punitive damages in amounts to be determined at trial;

    D.    attorneys' fees, costs, and interest; and

    E.    such other relief as this court deems appropriate.

Respectfully submitted,

KEEFER WOOD ALLEN & RAHAL, LLP

Dated: 05/15/2018    By:   s/Bradford Dorrance
Bradford Dorrance
PA I.D. #32147
417 Walnut Street, 4th Floor, Rear
P. O. Box 11963
Harrisburg, PA  17108-1963
bdorrance@keeferwood.com
(717) 255-8014 (phone)
(717) 255-8042 (fax)

(Attorneys for Plaintiff)